IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

In re:    HAROLD S. ALBERTSON, JR.,

        Debtor.

ARTHUR M. STANDISH, as Trustee,

        Plaintiff,

v.                                                                                                    Civil Action No. 2:15-mc-00025

P. RODNEY JACKSON, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER
*(Defendants' Motion to Withdraw the Reference)*

Pending before the court is defendants P. Rodney Jackson; LAC, LLC; and LAC Holdings, LLC's Motion to Withdraw the Reference ("Motion") [Docket 1]. As set forth below, the defendants' Motion is **DENIED**.

**I.    Background**

This proceeding involves three claims: Count I alleges a claim of usury under West Virginia law, Count II alleges a claim of illegal contract under West Virginia law, and Count III alleges a claim of preferential transfer under federal bankruptcy law.

Debtor Harold S. Albertson, Jr. is a West Virginia attorney who represented Lydia P., a toddler injured in an accident in a cemetery. (Motion [Docket 1] ¶ 5). Lydia P.'s mother and next friend executed a contingent fee contract with Mr. Albertson providing him with a contingent fee

of 40% of any recovery. (*Id.*). Defendant P. Rodney Jackson, also a West Virginia attorney, acted as co-counsel in Lydia P.'s case. (*Id.* ¶ 6).

Messrs. Albertson and Jackson filed a complaint on behalf of Lydia P. on July 21, 2012. (*Id.* ¶ 7). The suit was dismissed a few months later so that the parties could engage in settlement negotiations. (*Id.* ¶ 8). Settlement negotiations and case development proceeded for several months. (*Id.* ¶ 9). Mr. Jackson participated extensively and incurred all of the expenses relating to the case. (*Id.*).

During this time, Mr. Albertson needed money for "immediate economic necessities." (*Id.* ¶ 10). To help Mr. Albertson, Mr. Jackson and defendant LAC, LLC ("LAC"), a West Virginia limited liability company that later merged into defendant LAC Holdings, LLC ("LAC Holdings"), a South Carolina limited liability company, entered into a series of transactions with Mr. Albertson. (*Id.*). The first agreement provided that Messrs. Albertson and Jackson would split the contingent fee from Lydia P.'s case equally, except that Mr. Albertson owed $234,000[1] of his share of the fee to Mr. Jackson for amounts previously advanced to him. (*Id.* ¶ 11). Mr. Albertson and LAC subsequently entered into a "Purchase and Assignment Agreement" where LAC, and later LAC Holdings, through a series of transactions, "purchased"—according to the defendants—interests in the prospective contingent fee in the Lydia P. case. (*Id.* ¶¶ 12–23). In the end, Mr. Jackson advanced $234,000 to Mr. Albertson, and LAC and LAC Holdings paid $262,500 for shares of the contingent fee, which could increase in value to $541,500 depending on when payment was made to LAC and LAC Holdings. (*Id.* ¶¶ 24, 28). Thus, the total amount of cash paid to Mr. Albertson was $496,500. (*Id.* ¶ 24).

---

[1] It is unclear whether this amount should actually be $233,000, $234,000, or $237,000. (*See id.* ¶¶ 11, 11 n.1, 24). In any event, the exact amount of the advance is immaterial to the disposition of the defendants' Motion.

Lydia P.'s case settled for $7,250,000. (*Id.* ¶ 25). After deducting Mr. Jackson's expenses, the contingent fee totaled $2,380,666, or $1,190,333 each for Mr. Albertson and Mr. Jackson. (*Id.* ¶ 26). After deducting the advance Mr. Albertson had received and the value of the shares of the contingent fee Mr. Albertson had purportedly sold, which together totaled $775,500, Mr. Albertson received a net amount of $414,833. (*Id.* ¶ 31).

On September 5, 2013, certain creditors filed an involuntary Chapter 7 bankruptcy petition against Mr. Albertson. (*Id.* ¶ 33). On November 12, 2013, Mr. Albertson filed a voluntary petition. (Trustee's Resp. in Opp'n to Defs.' Mot. to Withdraw the Reference ("Resp.") [Docket 3], at 2). None of the defendants in the instant case have filed a proof of claim against the bankruptcy estate. (Motion [Docket 1] ¶ 34). On February 3, 2014, a party unrelated to this proceeding filed a complaint against Mr. Albertson, alleging that she had loaned him money in connection with his representation of Lydia P., and that although he had settled the suit in 2013, he had not repaid that loan to her as promised. (Resp. [Docket 3], at 2).

Plaintiff Arthur M. Standish was appointed trustee on September 9, 2013. (Motion [Docket 1] ¶ 35). On March 16, 2015, the plaintiff filed a three-count complaint against the defendants. (*Id.*). The complaint alleged the following: (1) the increase in value of the shares of the contingent fee was actually usurious interest under West Virginia law; (2) the Purchase and Assignment Agreement was an illegal contract under West Virginia law; and (3) the deduction of the advance and the value of the shares of the contingent fee from Mr. Albertson's portion was a preferential transfer under 11 U.S.C. § 547. (Compl. [Docket 3-11] ¶¶ 65–95).

On April 15, 2015, the defendants filed the instant motion to withdraw the reference, which was transferred and filed with this court. (Resp. [Docket 3], at 4).

## II. Legal Standard

Title 11 of the United States Code, commonly referred to as the "Bankruptcy Code," governs bankruptcy law in the United States. District courts have original and exclusive jurisdiction over "all cases under title 11," 28 U.S.C. § 1334(a), and original, though not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11," *id.* § 1334(b). Although district courts may automatically refer bankruptcy cases to non-Article III bankruptcy judges, *see id.* § 157(a), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any party, for cause shown," *id.* § 157(d). Withdrawal of the reference for cause on motion of a party is commonly referred to as "permissive withdrawal." *See, e.g.*, *Snodgrass v. New Century Mortg. Corp.*, 358 B.R. 675, 678 (S.D. W. Va. 2006).

In determining whether to exercise my discretion and withdraw the reference for cause, I consider the following factors: (1) whether the proceeding is core or noncore; (2) the uniform administration of bankruptcy law; (3) the promotion of judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial. *In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E.D. Va. 2003). The most important factor is whether the case presents a core or noncore proceeding. *In re Coe-Truman Techs., Inc.*, 214 B.R. 183, 187 (N.D. Ill. 1997). Additionally, the moving party "bears the burden of demonstrating cause for the Court to exercise its discretion and grant withdrawal." *Blue Cross & Blue Shield of N.C. v. Jemsek Clinic, P.A.*, 506 B.R. 694, 697 (W.D.N.C. 2014).

## III. Discussion

### A. Core Proceedings

A core proceeding must "arise under" title 11 or "arise in" a title 11 case. 28 U.S.C. § 157(b)(1)–(2); *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011). As an initial matter, I note that

"[s]imply because the proceeding presents questions of state law does not necessarily mean that the proceeding is 'non-core' or otherwise beyond the jurisdiction of the bankruptcy courts." *In re Poplar Run Five Ltd. P'ship*, 192 B.R. 848, 856–57 (Bankr. E.D. Va. 1995); *accord* § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."). The dispositive issue instead is the centrality of the proceedings to the bankruptcy case. *In re Sys. Eng'g & Energy Mgmt. Assocs., Inc.*, 252 B.R. 635, 642 (Bankr. E.D. Va. 2000). Additionally, in determining whether a proceeding is core or noncore, courts have considered whether (1) the claims are specifically identified as core proceedings under 28 U.S.C. § 157(b)(2); (2) the claims existed prior to the filing of the bankruptcy case; (3) the claims are based entirely on state law or otherwise existed independently from title 11; and (4) the parties' rights or obligations are significantly affected by the outcome of the bankruptcy proceedings. *Blackshire v. Litton Loan Servicing, L.P.*, No. 2:08-mc-00116, 2009 WL 426130, at *2 (S.D. W. Va. Feb. 13, 2009) (citing *Caperton v. A.T. Massey Coal Co.*, 270 B.R. 654, 657 (S.D. W. Va. 2001); *In re Sys. Eng'g & Energy Mgmt. Assoc., Inc.*, 252 B.R. at 642).

Here, Counts I and II—usury and illegal contract, respectively—are not specifically identified as core proceedings under 28 U.S.C. § 157(b)(2). Subparagraph (O) provides that "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship" can be considered core proceedings. § 157(b)(2)(O). However, this catch-all provision should be read narrowly in light of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), and subsequent Supreme Court rulings, such as *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), and *Stern v. Marshall*, 131 S. Ct. 2594 (2011), that have tightened the constitutional limits of bankruptcy

5

courts' power to enter final orders notwithstanding Congress's broad grant of power through the Bankruptcy Code. *See In re Apex Express Corp.*, 190 F.3d 624, 631–32 (4th Cir. 1999). Consequently, although the plaintiff argues that "[w]ith respect to usury claims, courts have determined they can be core proceedings," (Resp. [Docket 3], at 6), the cases to which the plaintiff cites are distinguishable or are contrary to the Fourth Circuit's holding in *In re Apex Express Corp.* The plaintiff's argument with regard to illegal contract claims is equally unavailing. *See In re Apex Express Corp.*, 190 F.3d at 631–32; (Resp. [Docket 3], at 6–7).

      In addition, these two claims existed before the filing of the bankruptcy case, they are based entirely on state law, and the parties' rights or obligations are not significantly affected by the outcome of the bankruptcy proceedings. *See Blackshire*, 2009 WL 426130, at *2. Therefore, I **FIND** that Counts I and II are noncore proceedings. Counts I and II, however, are "otherwise related to a case under title 11." *See* 28 U.S.C. § 157(c)(1); *Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625–26 (4th Cir. 1997) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." (emphasis in original) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *abrogated in part on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124–25 (1995))); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) ("The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the *Pacor* test with little or no variation. . . . [T]hese cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."). Consequently, these claims may be heard by a bankruptcy judge, who "shall submit proposed findings of fact and conclusions of law to the district court." § 157(c)(1).

Court III—avoiding a preferential transfer—clearly is a core proceeding. *See id.* § 157(b)(2)(F).

Overall, the presence of a core proceeding balances against the two noncore proceedings, especially because the two noncore proceedings are fairly significant in resolving the bankruptcy case. *See In re Sys. Eng'g & Energy Mgmt. Assocs., Inc.*, 252 B.R. at 642. Thus, this factor is relatively neutral in, or slightly against, withdrawal of the reference to the bankruptcy court.

### B.     Uniform Administration of Bankruptcy Law

The bankruptcy court—having experience and expertise in bankruptcy law—is well suited to handle matters such as preferential transfers. The uniform administration of bankruptcy law weighs heavily against withdrawal of the reference.

### C.     Judicial Economy

The bankruptcy court's routine handling of preferential transfers promotes judicial economy. In addition, bankruptcy courts are not unfamiliar with claims of usury or illegal contract in the bankruptcy context. Furthermore, the bankruptcy court here has a better understanding of the underlying bankruptcy case, which is approaching two years old, than this court does. Keeping the adversarial proceeding within the court most familiar with the parties and the facts will promote judicial economy. Overall, this factor weighs against withdrawal of the reference.

### D.     Efficient Use of the Parties' Resources

The defendants argue that because nonfinal determinations by a bankruptcy court are subject to de novo review by a district court, not withdrawing the reference could lead to several rounds of costly briefing on the same legal issue. (Motion [Docket 1], at 16; Defs.' Reply in Supp. of Mot. to Withdraw the Reference ("Reply") [Docket 4], at 6–7). I agree. This factor weighs in favor of withdrawing the reference.

### E. Forum Shopping

There is no evidence of forum shopping in this matter. Overall, this factor is neutral.

### F. Right to a Jury Trial

To determine whether a right to a jury trial attaches to a claim, courts use a three-part test. First, a court must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). Next, a court must "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* The second part of this test "is more important than the first." *Id.* Last, "[i]f, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment," then a court "must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." *Id.*

Here, Count I—usury—is a claim that was typically brought as an action of assumpsit in the early years of this nation. *See, e.g.*, *Levy v. Gadsby*, 7 U.S. (3 Cranch) 180, 180 (1805); *Riddle & Co. v. Mandeville & Jamesson*, 20 F. Cas. 756, 756 (C.C.D.D.C. 1802) (No. 11,807), *aff'd sub nom. Mandeville & Jameson v. Joseph Riddle & Co.*, 5 U.S. (1 Cranch) 290 (1803). Count II—illegal contract—has a similar history. *See, e.g.*, *Hawkins v. Cox*, 11 F. Cas. 878, 878 (C.C.D.D.C. 1819) (No. 6243); *Carey v. Prentice*, 1 Root 91, 91 (Conn. Super. Ct. 1784). Assumpsit is a form of action at law. *See Gaines v. Miller*, 111 U.S. 395, 398 (1884); *see also, e.g.*, *Adams v. Miller*, 1 F. Cas. 138, 138 (C.C.D.D.C. 1801) (No. 63); *Richardson v. Fen*, (1772) 98 Eng. Rep. 546 (K.B.) 546; Lofft 86, 86–87. The plaintiff has demanded monetary relief, which is a remedy at law. *See Granfinanciera*, 492 U.S. at 46–47; (Compl. [Docket 3-11] ¶¶ 71, 88). Thus, the first two prongs of the *Granfinanciera* test indicate that the defendants are entitled to a jury trial under the Seventh Amendment. *See Granfinanciera*, 492 U.S. at 42.

As for the third prong, Congress may create non-Article III courts that finally adjudicate a matter only in three instances: territorial courts, courts martial, and courts that adjudicate cases involving public rights. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 64–70 (1982). Although some aspects of bankruptcy—generally those involving "core proceedings"—involve public rights, state law claims such as usury and illegal contract "are quintessentially suits at common law" that "constitute no part of the proceedings in bankruptcy but concern controversies arising out of it." *See Granfinanciera*, 492 U.S. at 55–56 (quoting *Schoenthal v. Irving Tr. Co.*, 287 U.S. 92, 95 (1932)). Thus, Counts I and II involve private rather than public rights. *See id.* at 56. Therefore, under the Seventh Amendment, the defendants have the right to a jury trial on these claims.

Turning to Count III, a party submitting a proof of claim against a bankruptcy estate subjects itself to the equitable power of the bankruptcy court. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990). Thus, if the trustee files a preference action against the party, that party does not have a right to a jury trial. *Id.* at 44–45. "If a party does *not* submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial." *Id.* at 45 (emphasis in original) (citation omitted). *But see West v. Freedom Med., Inc. (In re Apex Long Term Acute Care–Katy, L.P.)*, 465 B.R. 452, 467–68 (Bankr. S.D. Tex. 2011) (concluding that *Central Virginia Community College v. Katz*, 546 U.S. 356, 377 (2006), abrogated *Langenkamp* and that "preferential transfers fall[] within the public rights doctrine" exception to Article III allowing adjudication by a non-Article III tribunal); *cf. Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1967–68 (2015) (Thomas, J., dissenting)

9

(suggesting that Article I's Bankruptcy Clause carves out a fourth exception—after territorial courts, courts martial, and public rights—from Article III).

Here, the defendants have not filed a proof of claim against the bankruptcy estate. (Motion [Docket 1] ¶ 34). They also have not consented to a jury trial by the bankruptcy judge. (*Id.* at 20); *see* 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under [§ 157] by a bankruptcy judge, the bankruptcy judge may conduct the jury trial . . . with the express consent of all the parties."). Thus, the defendants are entitled to a jury trial on the plaintiff's preference claim.

Although the defendants are entitled to a jury trial on all three claims, I do not find that the preservation of the right to a jury trial weighs in favor of withdrawing the reference at this time. Indeed, even though the bankruptcy court may not conduct a jury trial, it does not follow that it "immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial." *Official Comm. of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122, 128 (4th Cir. 1993). Rather, "[t]he decision whether or not to withdraw the referral immediately 'is frequently more a pragmatic question of efficient case administration than a strictly legal decision.'" *Id.* at 128 (quoting *Travelers Ins. Co. v. Goldberg*, 135 B.R. 788, 792 (D. Md. 1992)). In some instances, the bankruptcy court "may be uniquely qualified to conduct pre-trial matters," *id.*, while in others, a referral to the bankruptcy court may be a "futile detour," *id.* (quoting *Travelers Ins. Co.*, 135 B.R. at 792).

Here, I see no reason why the bankruptcy court cannot handle pretrial matters. In light of the other factors I have considered, *see supra* Parts III.C, III.E, allowing the bankruptcy court to

handle pretrial matters "capitalizes on the bankruptcy court's familiarity with the proceedings[,] . . . ensures that judicial resources are not wasted," and alleviates the risk of forum shopping. *Loveridge v. Hall (In re Renewable Energy Dev. Corp.)*, 500 B.R. 77, 92 (D. Utah 2013), *appeal docketed*, No. 14-4001 (10th Cir. Jan. 3, 2014). Finally, I reject the defendants' assertion that withdrawing a case at a later date "is [c]ontrary to [a]uthority in this [d]istrict," (Reply [Docket 4], at 6). *See Dwyer v. First Nat'l Bank (In re O'Brien)*, 414 B.R. 92, 103 (S.D. W. Va. 2009) ("[D]eclining to withdraw the reference at this time preserves the right to a jury trial because the reference may be withdrawn if and when a jury trial becomes necessary."); *accord Stansbury*, 13 F.3d at 128.

Accordingly, I **FIND** that these factors weigh against withdrawing the reference to the bankruptcy court at this time. Therefore, the defendants' Motion is **DENIED**.

**IV.     Conclusion**

For the reasons discussed above, it is **ORDERED** that the defendants' Motion [Docket 1] be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     July 30, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE